WO

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

Slep-Tone Entertainment Corporation and Piracy Recovery LLC, et al.,

    Plaintiffs,

v.

Gary Anthony Granito et al.,

    Defendants.

CV 12-298 TUC DCB

**ORDER**

Pending before the Court is Defendant's Response to this Court's Order to Show Cause (Doc 101) as to why he should not be sanctioned for spoliation as a result of using special software to erase computer hard drives that allegedly contained infringing karaoke accompaniment tracks marked with Plaintiffs' registered trademarks. The Court finds that Defendant Granito's admitted spoliation of evidence has severely impaired the Plaintiffs' ability to litigate the case. The Court finds the Defendant acted willfully in destroying the evidence, which he knew to be especially relevant. The Court finds no lesser sanction than summary judgment to be appropriate. The Court grants summary judgment for Plaintiffs. Defendant's Motion for Summary Judgment fails because it too depends on evidence now destroyed. The Court shall hear from the parties in respect to damages.

**I. Overview**

This is a trademark and tradedress infringement case. The Defendant is accused of making, acquiring, using, and in some cases selling and distributing unauthorized counterfeit duplicates of karaoke accompaniment tracks that have been marked with the Plaintiffs' registered trademarks and unregistered tradedress.

On June 18, 2013, Defendant filed a Motion for Summary Judgment (Doc 92) asserting that the Plaintiffs have no proof he made, acquired, or used unauthorized counterfeit duplicates of Plaintiffs' karaoke accompaniment tracks on hard drives. In response, Plaintiffs filed a Motion for an Order to Show Cause (OSC) (Doc 94) why the summary judgment should not be entered for them because Defendant deleted the contents of the allegedly infringing hard drives. Plaintiffs assert the Defendant caused the lack of evidence which he cannot now rely on for summary judgment against Plaintiffs. This Court ordered the Defendant to show cause why summary judgment should not be entered against him. (Doc 99). Defendant filed his response to the OSC on August 6, 2013. The Plaintiffs did not reply.

Defendant argues that neither summary judgment nor any lesser sanction should be imposed upon him for spoliation because he did not have a culpable state of mind and acted in good faith to delete the files and erase the hard drives when he found out about the karaoke industry's 1-to-1 correspondence requirement before this lawsuit was filed by Plaintiffs. He further claims to own more than 1,100 of Plaintiffs' discs, which he purchased for over $20,000 over the years. He also claims that he never received Plaintiffs' letter that told him to not destroy or modify any hard drive he used in his business. Finally, Defendant argues that the destroyed evidence was not relevant because there is no evidence to show that it was relevant.

Both motions rise or fall together because Defendant Granito's challenges to Plaintiffs' claims hinge on first establishing the karaoke discs being used by Defendant, with or without one-to-one correspondence.[1] For example, Defendant cannot dispute the tradedress claim by asserting it fails based on his review of "a large number of Plaintiffs' discs." Only the discs used by Defendants are at issue, and spoliation of this essential evidence prevents both Plaintiffs and Defendants from establishing their respective positions.

---

[1] Defendant's assertion that Plaintiffs' discs were not properly trademarked is a damage limitation, not an affirmative defense. 15 U.S.C. § 1111 (statutory or actual notice requirement).

2

## II. Relevant Facts

The companies that make the karaoke accompaniment tracks allow Karaoke Jockeys (KJs) to make a single digital copy of a disc for use in karaoke shows. This is called one-to-one correspondence. Defendant says he was unaware of this industry standard until February, 2012, when he bought a hard drive filled with tracks that had the company trademarks removed. After purchasing the drive, Defendant claims he deleted all of the files off of his drives that were not in compliance using special software to make file recovery difficult, if not impossible. Defendant asserts that after deleting the files from the hard drives, he purchased three certifications from Plaintiff Chartbuster for over $20,000 worth of Plaintiff's discs.

Prior to filing this lawsuit, Plaintiffs investigated Defendant by attending multiple karaoke shows where Defendant and his operators were working and allegedly using counterfeit versions of Plaintiffs' karaoke accompaniment tracks. Additionally, Defendant sold the hard drive to Plaintiffs' agent with the trademarks removed from the karaoke tracks, which allegedly contained counterfeits of more than 150,000 karaoke accompaniment tracks, including thousands of counterfeits of the Plaintiffs' karaoke accompaniment tracks. This prompted Plaintiffs to file this lawsuit on April 20, 2012. That same day Plaintiffs attempted to serve Defendant; however, Defendant evaded service and ultimately had to be served through publication. Plaintiffs allege that Defendant received a letter in the mail dated April 21, 2012 that included instructions to not remove or modify any tracks from any hard drives. The letter also included a warning that doing so may result in severe punishment by the Court. Defendant alleges that he never received this letter.

The Court issued the Scheduling Order on November 20, 2012, with a deadline to complete discovery for June 3, 2013. Plaintiffs made discovery requests on May 1, 2013,

(Motion for OSC at 2),[2] that asked for the identification and production of computer hard drives and other storage media that contained karaoke accompaniment tracks. Defendant replied in June stating that he could not produce the drives as they had been wiped clean using special software. Defendant agreed to produce hard drives used by his operators. Instead of producing those drives, however, Defendant produced three hard drives he had assembled the day before, which had never been used in a show. Defendant then reiterated that all hard drives had been wiped clean. Defendant also informed Plaintiffs that after he wiped the drives clean, he either repurposed them or discarded them as defective. It appears from the record that Defendant never produced the hard drives, wiped clean or otherwise, used by his KJs. (Motion for OSC, Ex. A: Harrington Decl.)

Defendant alleges he made his hard drive available to the Plaintiffs on June 3, 3013, that contained 1,100 Sound Choice discs which he had purchased over a period of several years for approximately $20,000. (Response to OSC (Doc. 101) at 6-7; Granito Affidavit ¶15-16.) According to Defendant, Plaintiff Slep-Tone refused to sell him additional Sound Choice discs because the three sets he proposed to buy would not cover the 20 plus computers being used by his operators and would legitimize a major infringer while creating even more potential infringement. (Response to OSC (Doc. 101) at 7.) One or two months prior to the filing of this law suit, approximately in February, Defendant wiped his computers to remove karaoke tracks because he did not want to retain any tracks that may have been questionable. (Response to OSC, Granito Affidavit ¶ 13-1.)  Defendant purchased Chartbuster discs on March 26, 2012, April 30, 2012, and May 9, 2012. *Id.*, Ex. B: Invoices.

---

[2]Plaintiffs failed to file a Notice of Service as required by LRCiv 5.2; Fed. R. Civ. P.5(d). There is no explanation for why Plaintiffs' discovery requests were made late, but the record reflects excessive motion work during the discovery period resulting from numerous motions filed by the *pro se* Defendants pursuant to Fed. R. Civ. P.. 12.

4

## III. Discussion: Sanctions for Spoliation

"'A party seeking sanctions for spoliation of evidence must prove the following elements: 1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered, 2) the destruction or loss was accompanied by a 'culpable state of mind,' and 3) the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery of the spoliated evidence.'" *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d. 997, 1005 (D. Ariz. 2011) (quoting *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 509 (Md. 2009)). Further, while this Court has discretion to impose spoliation sanctions, it "must determine which sanction best (1) deters parties from future spoliation, (2) places the risk of an erroneous judgment on the spoliating party, and (3) restores the innocent party to their rightful litigation position." *Surowiec*, 790 F. Supp. 2d at 1008 (quoting *Ashton v. Knight Transp., Inc.*, 772 F.Supp.2d 772, 804 (N.D.Tex. 2011)).

Once the Court decides to sanction a party for spoliation, it applies a five part test to determine whether a terminating sanction such as summary judgment is appropriate. *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 347 (9th Cir. 1995) (quoting *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir.1993)). The Court must weigh: "(1) the public's interest in expeditious resolution of the litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id.* Additionally, to impose drastic sanctions such as dismissal, the spoliation must be due to willfulness, fault, or bad faith. *Id.*

The Court should always impose the least onerous sanction given the extent of the offending party's fault and the prejudice to the party seeking the sanctions. *In re Napster, Inc., Copyright Litigation*, 462 F. Supp.2s 1060, 1078 (Calif. 2006).

1. <u>Whether the party in control of the evidence had the obligation to preserve it when it was destroyed or altered.</u>

A party engages in spoliation if he or she has "some notice that the documents were potentially relevant" to the litigation before they were destroyed. *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991).

Here, the Defendant claims he wiped the drives clean when he was told by an acquittance about Slep-Tones lawsuits against multiple KJs and prior to being served in this action. Plaintiffs argue the Defendant wiped the drives after receiving notice of this lawsuit, which included a letter telling him to not remove any karaoke tracks from the hard drives. At his deposition on June 3, 2013,[3] the Defendant testified that approximately a month or two before the filing of this lawsuit, he purchased a computer drive which had Sound Choice tracks on it and other tracks with the logo removed because he was told he could not be sued if he used tracks with the logos wiped. (Motion for OSC, Ex. 3: Granito Depo. at 45, lns 15-20.) Subsequently, the Defendant sold this computer to Plaintiffs during their pre-filing investigation. Plaintiffs argue that Defendant has admitted to being aware that litigation against him was either pending or likely when he destroyed the drives.

The Court notes that the Defendant clearly had control over the evidence. Defendant acted affirmatively to use specialized software to wipe the drives, instead of performing a standard deletion. Defendant's conduct precluded the files from being recovered and from

---

[3]Also on June 3, 2013, Defendant responded to Plaintiffs' Interrogatory #5, which sought: "disclosure of equipment, (including [] karaoke machines, laptop or desktop computers . . . that contained karaoke accompaniment tracks . . . state whether any . . . were configured, upon playback, to display the SOUND CHOICES or CHARTBUSTER KARAOKE trademarks or . . . trade dress . . . state manner in which you came to possess the equipment . . . state whether you are still in possession of the equipment . . and if not . . . , state how you disposed of them."  By written objection, Defendant complained that the interrogatory sought information that would enable Plaintiffs to identify equipment their investigators allegedly observed defendants using while displaying tracks which Plaintiffs claim were used without permission.

ascertaining the last date a file was accessed or the file was deleted. Additionally, Defendant acted further to destroy the computers by rebuilding, repurposing them or discarding them as defective. (Motion for OSC (Doc. 94), Ex. A: Harrington Decl. ¶¶ 7-8.) In all, he destroyed the computers, precluding any inspection of them to see if it might be ascertained when the hard drives were wiped. Defendant's assertion that he acted in February is self-serving and not supported by any extrinsic evidence. Contrary to his assertion that he was trying to be compliant in February, he admits that simultaneously he bought the computer with the Sound Choice and Chartbuster trademarks removed to avoid being sued. His assertion of wiping the computer hard-drives in good-faith rings hallow.

"It is well established that the duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation."*Surowiec*, 790 F. Supp. 2d at 1005 (internal citation and quotation omitted). "Stated differently, the duty to preserve is triggered not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *Id.* (internal citations omitted).

At the very latest, Defendant's duty to preserve his computer's hard drive and electronic data arose when he was served with Plaintiffs' Complaint on April 20, 2012, with or without the letter from Plaintiffs' counsel expressly warning him to not destroy evidence contained on his computers. While Defendant refused to accept service by mail and ultimately Plaintiffs had to serve him by publication, the service packet was mailed to him at his correct address. While Defendant asserts the letter was not contained in the service materials, Plaintiffs' attorney attests it was included with the service material. It does not matter. Once Defendant received a copy of the Complaint, mailed to his resident-address, he cannot assert he did not know about the law suit.

Additionally, the duty to preserve evidence may arise even sooner, if a reasonable person should have known that the evidence may be relevant to litigation that is "anticipated" or "reasonably foreseeable." *PacifiCorp v. Northwest Pipeline GP*, 879 F.Supp.2d 1171,

1188 (Or. 2012) (citing *Silvestri v. Gen. Motors Corp.,* 271 F.3d 583, 590, 591 (4th Cir.2001), *Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir.1998), *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir.1999)). "When litigation is 'reasonably foreseeable' is a flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." *Id.* (quoting *Micron Tech., Inc. v. Rambus Inc.,* 645 F.3d 1311, 1320 (Fed.Cir.2011) (citing *Fujitsu Ltd. v. Fed. Express Corp.,* 247 F.3d 423, 436 (2d Cir.2001)). The mere existence of a potential claim or the distant possibility of litigation is not enough. *Id.* In the Ninth Circuit, litigation must be "probable," before the duty to preserve evidence applies. *Id.* (citing *Realnetworks, Inc. v. DVD Copy Control Ass'n,* 264 F.R.D. 517, 524 (N.D.Cal.2009); *Hynix Semiconductor Inc. v. Rambus, Inc.,* 591 F.Supp.2d 1038, 1061 (N.D.Cal.2006); *In re Napster, Inc. Copyright Litig.,* 462 F.Supp.2d 1060, 1068 (N.D.Cal.2006)).

The Court finds that Defendant's admission that he was taking measures in February to avoid being sued for infringement, including wiping his computers, reflects that any reasonable person should have known, and the Defendant knew, the evidence might be relevant to "anticipated" or "reasonably foreseeable" litigation. The Court finds that the Defendant had control over the evidence and had an obligation to preserve it when he destroyed it.

2.    Whether the destruction or loss was accompanied by a "culpable state of mind."

There is evidence to undermine the Defendant's assertion of innocence. First, Defendant used specialized software to completely wipe the drives clean of information as to make file recovery impossible. Second, Defendant admittedly found out about the Slep-Tone and other lawsuits during a transaction to buy a hard drive that had the trademarks removed from the karaoke accompaniment tracks. This shows that the Defendant was willing to purchase counterfeit tracks, if he could do so in a way to protect himself from being sued for trademark infringement. Third, Defendant has still not turned over the physical hard

drives that once contained the allegedly infringing drives to enable the Plaintiffs to inspect them; Defendant asserts they have been completely destroyed.

The Court notes the Defendant testified at his deposition that he made no changes in his operations subsequent to finding out about the Slep-Tone law suits. (Motion for OSC, Ex. Granito Depo at 46.) The hard drives he was using did not have any Sound Choice or Chartbuster songs except for the one he used, and he was the only one who had Sound Choice because he didn't really care about Chartbuster. *Id.* Defendant testified that he was not using the Sound Choice hard drive until he could get a certification with it. *Id.* at 47. If true, there was no reason for Defendant to wipe the hard drives.

Additionally, Defendant testified at his deposition that after he knew Sound Choice, aka Slep-Tone, was trying to serve him, *id.* at 53, he was in compliance but wanted to get one-to one correspondence for when he sent out KJs to do gigs. *Id.* at 54. And so, he purchased the three Chartbuster certifications. *Id*. at 53. [4]

The Court finds that the Defendant acted with a culpable state of mind when he wiped the hard drives and destroyed the computers.

---

[4]Defendant's Motion for Summary Judgment challenges the use of his deposition testimony as evidence in this case, pursuant to Fed. R. Civ. P. 32(a)(5), because it was taken on short notice less than 14 days, and he moved for a protective order under Rule 26(c)(1)(B) to extend the time for his deposition by two weeks, which was still pending when the deposition was taken. As the Court stayed Plaintiffs' Response to the Motion for Summary Judgment, pending a decision on whether to grant summary judgment for Plaintiffs for spoliation, Plaintiffs have not responded to this evidentiary challenge. The Court finds the deposition is admissible because Defendant withdrew his Motion for a Protective Order. At 11:00 am on the day set for his deposition, the Defendant withdrew the motion as moot because the Court had not yet ruled on it, and he informed the Court he was appearing at the deposition. The withdrawal of the Motion for a Protective Order made any ruling by this Court moot, but had Defendant not withdrawn the motion, the Court would have denied it. All other discovery for from the Defendant was scheduled for this dy, the last date set for the close of discovery. This same date he tendered his responses to interrogatories and produced the computers that are the subject of the Motion for Order to Show Cause.

3.     <u>Whether the evidence was relevant to the claims or defenses of the party that sought the discovery of the spoliated evidence.</u>

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.  Defendant argues that relevance cannot be established because there was no incriminating evidence on the computers. (Response (Doc. 101) at 12.) A party "can hardly assert any presumption of irrelevance as to the destroyed documents" because "the relevance of ... [destroyed] documents cannot be clearly ascertained because the documents no longer exist," *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (quoting *Alexander v. Nat'l Farmers Org.*, 687 F.2d 1173, 1205 (8th Cir.1982)).

Here, the contents of the hard drives would either prove or disprove that Defendant possessed counterfeit tracks. The Defendant's admission that he wiped the hard drives to bring them into one-to-one compliance or to avoid suit underscores the relevancy of the evidence and suggests the Defendant understood its relevance. Defendant, in fact, moves for summary judgment in part because Plaintiffs have no evidence of any unauthorized counterfeit duplicates of karaoke accompaniment tracks. (MSJ (Doc. 92) at 6-11.)

**IV.  Discussion: Whether Summary Judgment or a Lesser Sanction is Appropriate**

The Court finds all three factors tip in favor of imposing sanctions against the Defendant for spoliation, and the Court finds that the Defendant was at fault in destroying the evidence and acted in bad faith.  Accordingly, dismissal may be proper, but the Court must consider "less severe alternatives" than outright dismissal. *Leon*, 464 F.3d at 958.

To determine whether summary judgment or a lesser sanction is appropriate, the Court must weigh: "(1) the public's interest in expeditious resolution of the litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Anheuser-Busch*, 69 F.3d at 347 (quoting *Henry v. Gill Indus., Inc.*, 983

F.2d 943, 948 (9th Cir.1993)). Additionally, to impose drastic sanctions such as dismissal, the spoliation must be due to willfulness, fault, or bad faith. *Id.*

1. <u>The public's interest in expeditious resolution of the litigation</u>.

Generally, the first factor favors a case-dispositive sanction. *Surowiec*, 790 F. Supp. 2d at 1009. Here, Defendant's deleting the allegedly infringing files from the hard drives resulted in a delay in these proceedings. Had Defendant not wiped the hard drives clean and discarded them, the contents could have easily been examined to determine if Defendant violated Plaintiffs' one-to-one correspondence policies and trademarks. The spoliation also required the Motion for Sanctions and delayed disposition of Defendant's Motion for Summary Judgment. Plaintiffs did not file a dispositive motion; their case is ready for trial, but for the spoliation.

2. <u>The court's need to manage its dockets.</u>

Like the first factor, the second factor generally favors a default judgment. *Surowiec*, 790 F. Supp. 2d at 1009.

3. <u>The risk of prejudice to the party seeking sanctions.</u>

Prejudice looks at "whether the spoliating party's actions impaired the non-spoliating party's ability to go to trial or threatened to interfere with the rightful decision of the case." *Id.* (citing *Leon*, 464 F.3d at 959). Additionally, a party may be prejudiced when, as a result of spoliation, the party's ability to litigate a claim is "severely impaired" and the party is forced to rely on "incomplete and spotty evidence." *Anheuser-Busch*, 69 F.3d at 354. However, when a party is not irreparably prejudiced from the loss of evidence that was destroyed, it is appropriate to permit the fact finder to presume that the destroyed evidence was prejudicial." *Surowiec*, 790 F. Supp. 2d at 1009 (citing *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F.Supp.2d 598, 618 (S.D.Tex.2010)).

In *Leon*, the court found that the district court did not clearly err when it dismissed plaintiff's case because the defendant-employer would be prejudiced by the plaintiff's deletion of 2,200 files from his laptop during the pendency of litigation. There, the plaintiff

11

admitted deleting entire directories of personal files after he was placed on leave by his employer. He also stated that the week before he shipped the computer back to his employer he wrote a program to wipe any deleted files from the unallocated space in the hard drive. The plaintiff claimed his wiping of relevant evidence was merely negligent and not willful because he meant to wipe only "personal" information. The court noted that there was no way of recreating the contents of these files. The court reasoned that the types of files the plaintiff would have deleted out of privacy concerns would "likely be at the heart of IDX's defense were [the files] available." The spoliation "threatened to distort the resolution" of the case because any number of the 2,200 files could have been relevant to IDX's claims or defenses, although it was impossible to identify which files and how they might have been used. Because of the obvious relevance of plaintiff's "personal" files to the litigation and the harm to defendant caused by the destruction of these files, the court found that the district court did not clearly err in its finding of prejudice.

Importantly, whether or not the documents would have changed the outcome of the trial is not the issue in determining prejudice; it is sufficient that a party's concealment of the documents clearly impaired the non-spoliating party's ability to go to trial and threatened to interfere with the rightful decision of the case. *Anheuser*, 69 F.3d at 349-350. For example, in *Anheuser*, the court affirmed the district court's finding that Anheuser's defense was prejudiced by the concealment of documents by the plaintiff. There, the defendant lied about the existence of financial documents and invoices for years. These documents were important for her defense because without the underlying documentation, plaintiff was forced to rely on defendant's tax returns at trial. Defendant repeatedly attacked the foundation and methodology of plaintiff's analysis at trial and consistently maintained that plaintiff had used an incorrect sales figure. The court reasoned that plaintiff's ability to litigate its case was harmed because it could have used the invoices at trial to support the accuracy of its financial analysis, to buttress the credibility of its expert, and to challenge defendant's testimony and the testimony of her expert.

When a party is prejudiced, but not irreparably, from the loss of evidence that was destroyed with a high degree of culpability, it is appropriate to presume that the destroyed evidence was prejudicial. *Surowiec*, 790 F. Supp. 2d at 1009. In *Surowiec*, the court held that although the plaintiff was prejudiced by defendant's spoliation of evidence, it was not sufficient to warrant summary judgment. There, the spoliating party failed to suspend the company policy to delete all emails 30 days after receiving a letter that threatened litigation. The result of defendant's spoliation was the loss of 7 months' worth of emails during the height of negotiations between the parties. However, there were still emails found around that time that were valuable to the plaintiff that he could use at trial. The court reasoned that although the plaintiff was prejudiced, the court could not conclude that he would be forced to litigate with "spotty or incomplete" evidence.

Here, the Court finds that the Defendant destroyed all the possible evidence relevant to establish whether or not he had infringing karaoke discs on his computer and on the computers being used by the Tony G KJs. The only alternative sources for this evidence would be Defendants' admissions; there might be some evidence gleaned during Plaintiffs' pre-filing investigation. The Court notes, however, that computer obtained during Plaintiffs' pre-filing investigation had the trademarks and tradedress erased. Plaintiffs are certainly being forced to rely on "spotty or incomplete" evidence at trial as a result of the hard drives being wiped. Were the content of the drives available, this case would be easily judged on its merits. The Court finds that Plaintiffs' case was seriously prejudiced when Defendant wiped the hard drives.

4. <u>The public policy favoring disposition of cases on their merits</u>

Generally, this factor weighs against a terminating sanction. *Surowiec*, 790 F. Supp. 2d at 1009. However, the fourth factor alone is not enough to outweigh the other factors. *Leon*, 464 F.3d at 961.

13

5. <u>The availability of less drastic sanctions</u>

The fifth factor also weighs against a case-dispositive sanction when a lesser sanction such as an adverse inference instruction is available. *Id.* However, an adverse inference jury instruction, rather than entry of default judgment, is appropriate where there is no evidence that the spoliation would force a party to rely on incomplete and spotty evidence at trial. *Id.* And, when spoliation is due to willfulness, fault, or bad faith, the Court may consider imposing the more drastic sanction of dismissal. *Id.*

**IV. Conclusion**

The Court finds the lesser sanction of an adverse inference is insufficient to remedy the prejudice attributable to the spoliation or as a deterrent for spoliation. For example, the Court might instruct: As to the computers or their contents, if the jury finds the Defendant could have produced them, they were within the Defendant's control, and they would have been material in deciding any facts in dispute in the case, then the jury is permitted, but not required to, infer that the computers and their contents would have been unfavorable to the Defendant. And, a party that anticipates litigation has an affirmative duty to preserve relevant evidence. The Plaintiffs still has the burden to prove Defendant was using infringing karaoke discs because the inference does not amount to substantive proof and cannot take the place of proof of a fact necessary to prevail. Am. Jur. 2d, <u>Evidence</u>, 224 (1994). The deterrent value of an adverse inference is also limited because of the uncertainty as to whether a jury will draw the inference against the spoliator. *Micron Technology Inc., v. Rambus*, 917 F. Supp. 2d 300, 325-326 (Del. 2013). A party might decide an adverse inference is less detrimental than allowing certain evidence to be presented. *Id.*, And, the Plaintiffs are not restored to the same position in which they would have been because they have very limited rebuttal evidence. As pointed out by Defendant, no evidence exists as to what or was not on the computers.

The Court grants summary judgment for Plaintiffs on liability. Plaintiffs must still prove up damages. Plaintiffs' presentation of evidence regarding damages will ensue that

damages are fairly apportioned between the Defendants based on actual use of the computers containing the infringing discs. The parties shall file a Pretrial Order for purposes of trial on the question of damages.

**Accordingly,**

**IT IS ORDERED** that the Defendant's Motion for Summary Judgment (Doc. 92) is DENIED.

**IT IS FURTHER ORDERED** that Defendant having failed to show cause why summary judgment should not be entered for Plaintiffs for spoliation, the Court GRANTS the Motion for an OSC (Doc. 94) and enters summary judgment for Plaintiffs on liability.

**IT IS FURTHER ORDERED** that within 30 days of the filing date of this Order, the parties shall file the Pretrial Order for a trial on damages. A pretrial conference shall be set thereafter.

DATED this 7th day of January, 2014.

David C. Bury
United States District Judge

15